**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **BRICE MONTECINO ET AL** | **CIVIL ACTION NO. 25-1032** |
| **VERSUS** | **JUDGE EDWARDS** |
| **WALMART INC** | **MAG. JUDGE PEREZ-MONTES** |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (R. Doc. 25) filed by the defendant, Walmart, Inc. ("Walmart"). Plaintiff Brice Montecino ("Montecino") opposes. *See* R. Doc. 29. Walmart replied. *See* R. Doc. 30. Having carefully considered the parties' memoranda and the applicable law, the Motion is **GRANTED**.

## BACKGROUND

This case arises from Montecino's fall at a Walmart store in Pineville, Louisiana. On December 24, 2023, Montecino went to Walmart to purchase groceries. *See* R. Doc. 29-6 at 23–24. That day, according to Montecino, the weather was misty, and the ground outside was wet. *See id.* at 22–23. As Montecino exited Walmart with his groceries in his shopping cart, another customer pushing a baby stroller attempted to enter the store through the exit door. *See* R. Doc. 29-1, Ex. 3 at 0:06:09–0:06:15. With the two approaching one another, Montecino attempted to move his shopping cart to the right to avoid a collision. *See id.* at 0:06:14–0:06:17. Montecino then fell. *See* R. Doc. 25-3 at 0:00:36–0:00:39.

According to Walmart, its video surveillance shows Montecino stepping and dragging his shopping cart to the right. *See* R. Doc. 25-1 at 7 (citing R. Doc. 25-3 at

0:00:34–0:00:35.). Once Montecino planted his right foot, Walmart contends, he kept it planted. *See id.* Montecino then grimaced, lifted his left foot, and began to fall. *See id.* Walmart further contends that Montecino's right knee buckled as he fell to the ground. *See id.*

Montecino paints a different picture—one that begins approximately thirty minutes before his fall. *See* R. Doc. 29 at 2–9. Because of the misty weather, Walmart placed a wet-floor caution sign between its entry and exit pathways. *See generally* R. Doc. 29-1, Ex. 3. But, at 11:50 a.m., a Walmart employee moved this sign to the wall along the exit pathway while painting the wall. *See* R. Doc. 29-1, Ex. 4 at 0:34:26–0:34:50. The employee did not return the sign to its original position—between the entry and exit pathways. *See id.* at 0:34:49–0:34:51. Approximately one minute later, another Walmart employee began rearranging the mats and mopping next to the exit pathway. *See id.* at 0:35:26–0:36:03. Montecino claims that these actions left the exit pathway without adequate warning of a wet floor and that the floor remained wet because of both the misty weather and the Walmart employee's mopping. *See* R. Doc. 29 at 8, 12. Approximately thirty minutes later, at 12:22 p.m., Montecino fell. *See* R. Doc. 29-1, Ex. 3 at 0:06:17–0:06:19.

At his deposition, Montecino testified that as he approached the exit door, the other customer was coming in. *See* R. Doc. 29-6 at 23. He testified that, "I tried to move my basket out of the way and let her come in, because it was misty outside, and I tripped, slipped, lost my balance and fell." *Id.* Montecino did not see any water on the floor before or after his fall. *See id.* at 25–26. He testified, however, that his pants

were wet after the fall but that he did not notice or otherwise look for water on the floor. *See id*. Though he guessed that the water came from the misty weather outside, he could not say how long the floor had been wet. *See id.* at 27. He further testified that he did not know whether he tripped. *Id* at 25. As a result of this fall, Montecino sustained injuries to his right hand and wrist, shoulder, and knee. *See id.* at 29.

Walmart moves for summary judgment on three grounds. First, Walmart argues that Montecino has produced no evidence of an unreasonably dangerous condition. *See* R. Doc. 25-1 at 11–12. Second, Walmart contends that Montecino cannot establish that it created or had actual or constructive notice of an alleged condition. *See id.* at 12–14. Last, Walmart asserts that it did not breach a duty to Montecino with respect to the entrances and exits of its store. *See id.* at 14–17. Montecino, for his part, asserts that two unreasonably dangerous conditions existed: (1) the wet floor and (2) a "confusing pedestrian traffic flow." *See* R. Doc. 29 at 11. Montecino further relies on the presence of two Walmart employees in the vicinity of the fall within thirty minutes of the fall to establish sufficient notice or to show that Walmart created the alleged condition. *See id.* at 11–16. We address each below.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). “A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant].” *Id.* (internal quotations omitted). In reviewing the evidence, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.” *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 150 (2000).

“[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.” *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (cleaned up). “The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim.” *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

**ANALYSIS**

The Louisiana Merchant Liability Act (“LMLA”) establishes the plaintiff's burden of proof in slip-and-fall claims against merchants:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, *the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:*
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove exercise of reasonable care.
>
> C. Definitions:
>
> (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

La. R.S. § 9:2800.6 (emphasis added). "The burden falls squarely on the plaintiff to establish these elements and plaintiff's failure to prove any one element is fatal to [his] cause of action." *Schouest v. Home Depot*, No. 23-1505, 2025 WL 3640217, at *2 (E.D. La. Dec. 16, 2025) (citing *Peterson v. Brookshire Grocery Co.*, 751 F. App'x 533, 535 (5th Cir. 2018) (per curiam)). "The statute 'places a heavy burden of proof on plaintiffs' in slip and fall cases." *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007) (quoting *Jones v. Brookshire Grocery Co.*, 847 So. 2d 43, 48 (La. App. 2 Cir. 5/14/03)). And this burden of proof never shifts to the defendant. *Melancon v. Popeye's*

*Famous Fried Chicken*, 59 So. 3d 513, 515 (La. App. 3 Cir. 3/16/11) (citing *White v. Wal-Mart Stores, Inc.,* 699 So. 2d 1081 (La. 1997)).

**I. Whether an Unreasonably Dangerous Condition Existed**

As Montecino himself testified in his deposition, "I tripped, slipped, lost my balance and fell." *See* R. Doc. 29-6 at 23. But did he trip on or over an object—like a floor mat? Did he slip because of some condition—like water—on the floor? Or did he simply lose his balance? Any of these possibilities could explain Montecino's fall. And choosing among these possibilities would require us to speculate, which we cannot do. *See Adger v. TA Operating, L.L.C.*, No. 24-30530, 2025 WL 1276406, at *4 (5th Cir. May 2, 2025) ("Mere speculation as to what caused an accident does not raise a genuine issue of material fact to defeat summary judgment.") (citations and quotations omitted); *Bailey v. Fred's Stores of Tennessee Inc.*, 243 F. App'x 850, 852 (5th Cir. 2007) ("Indeed, as even [the plaintiff] concedes, the cause of her fall is unknown. Any suggestion otherwise would be mere speculation.") (citation omitted); *Sapia v. Walmart Inc.*, No. 22-1725, 2024 WL 3243514, at *5 (W.D. La. June 28, 2024).

Montecino did not see any water on the floor before or after his fall. *See* R. Doc. 29-6 at 25–26. Further, he testified that he did not know whether he slipped, tripped, or simply lost his balance. *See id.* at 23. Nor does the video and photographic evidence submitted establish that water—or any other substance—was present on the floor before Montecino's fall. *See generally* R. Docs. 29-1 and 29-2. Therefore, because Montecino cannot do more than speculate as to the cause of his fall, he cannot meet his burden to establish the existence of an unreasonably dangerous condition.

## II. Whether Walmart Created or had Actual or Constructive Notice of the Condition

### *A. Creation and Actual Notice*

For a plaintiff to prove that a defendant "created the hazardous condition, it must be 'directly responsible' for the plaintiff's injuries." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 747 (5th Cir. 2017) (quoting *Ross v. Schwegmann Giant Super Markets, Inc.*, 734 So. 2d 910, 913 (La. App. 1 Cir. 5/14/99), *writ denied*, 748 So. 2d 444 (La. 10/1/99)) (citation modified). "[D]irect responsibility can be shown in one of two ways—either via evidence that the defendant's employees actually created the hazard … or evidence that the defendant was responsible for maintaining the area where the hazardous condition was manifest…." *See id.* at 747–48.

To prove actual notice, a plaintiff may point to an employee's actual knowledge of the hazardous condition. *See Tillman v. Walmart, Inc.*, No. 19-12161, 2021 WL 149123, at *3 (E.D. La. Jan. 15, 2021); *Fuller v. Wal-Mart Stores, L.L.C.*, No. 12-251, 2013 WL 4094319, at * 3 (M.D. La. Aug. 13, 2013) ("Actual notice requires some showing by the plaintiff that the defendant actually witnessed the hazardous condition/event, or at least some showing of actual knowledge of a routine and expected dangerous condition at a certain location.").

Montecino contends that Walmart created—or, at a minimum, had actual knowledge of—a hazardous condition by leaving a purportedly wet floor without a caution sign. *See* R. Doc. 29 at 12. But, as with his slipping theory, this contention begins with an unsupported assumption: that the floor was wet. Montecino points to

video evidence showing a Walmart employee mopping the area in question approximately thirty minutes before his fall. *See* R. Doc. 29-1, Ex. 4 at 0:35:26–0:36:03. But the video does not establish, and Montecino does not address, whether the employee was dry mopping or wet mopping the area. *See id.*; *see generally also* R. Doc. 29. If the employee was dry mopping, for example, the video could undermine rather than support Montecino's theory that Walmart created a wet floor. And assuming one or the other would be impermissible speculation on our part. *See Adger*, 2025 WL 1276406, at *4.

True, the weather outside was misty. *See* R. Doc. *See* R. Doc. 29-6 at 22. But Montecino has offered no affidavit, deposition testimony, or other evidence from a Walmart employee indicating actual knowledge of the alleged wet floor—or the misty weather. Indeed, "[t]hat [Walmart] employees [were] in the area … prior to [Montecino's] fall is insufficient to establish that they had actual notice absent evidence that the employees actually saw the [alleged wet floor] prior to the … fall." *Johnson v. Wal-Mart Stores, Inc.*, No. 13-535, 2014 WL 7359051, at *3 (M.D. La. Dec. 23, 2014) (citing *Davis v. Target Corp. of Minnesota*, No. 11-0802, 2012 WL 3158875, at *3 (E.D. La. Aug. 3, 2012)).

Montecino's caution sign contention is equally unavailing. He argues that Walmart caused an unreasonably dangerous condition by relocating a wet floor sign to the other side of the mat (where a Walmart employee recently applied *wet* paint). *See* R. Doc. 29 at 12–13. The video evidence confirms that, when exiting the store, the sign was on the right side of the rug. *See generally* R. Doc. 29-1, Ex. 4. Before

Montecino's fall, however, a Walmart moved the sign to the left side of the rug. *See id.* at 0:34:26–0:34:51. But the wet floor sign, regardless of its position, was bright and yellow and still in the area. *See generally id.* And Montecino walked directly past it at least once. *See* R. Doc. 29-1, Ex. 3 at 0:06:09–0:06:13. Although Montecino does not recall noticing the sign, *see* R. Doc. 29-6 at 26, his failure to notice it does not make the sign ineffective altogether. "The only explanation for [Montecino's] lack of awareness regarding the wet floor is [his] inattentiveness." *Melancon*, 59 So. 3d at 515–16; *see also Schroeder v. Hanover Ins. Co.*, 255 So. 3d 1123, 1125–27 (La. App. 3 Cir. 9/19/18).

In short, because of the evidence, or lack thereof, presented, Montecino asks us to infer that the floor was wet, infer that Walmart either caused it to become wet (by mopping) or caused an unreasonably dangerous condition (by placement of the caution sign), and then infer that a Walmart employee knew of the condition. Without sufficient evidence for us to make these leaps, Montecino's theory that Walmart created or had actual notice of a wet floor rests on speculation, not evidence. *See Harrell v. Wal-Mart Louisiana LLC*, No. 23-0700, 2024 WL 4633643, at *3 (W.D. La. Oct. 30, 2024) (finding that plaintiff failed to show sufficient proof of creation or knowledge except for mere speculation).

*B. Constructive Notice*

"[I]n the absence of any proof that defendant had actual notice of the alleged defective condition," plaintiff must establish that the defendant had constructive notice as defined by La. R.S. § 9:2800.6(C)(1). *Williams v. Shoney's, Inc.*, 764 So. 2d

1021, 1024 (La. App. 1 Cir. 3/31/00). To establish constructive notice, the plaintiff must show that the hazardous condition remained on the floor for a period of time such that the defendant "would have discovered its existence through the exercise of ordinary care." *White*, 699 So. 2d at 1086.

*White* articulated that constructive notice requires proof of a temporal element, where "a plaintiff 'must make a positive showing of the existence of the condition prior to the fall' as well as the 'additional showing that the condition existed for some time before the fall.'" *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 216 (5th Cir. 2024) (quoting *White*, 699 So. 2d at 1084) (citation modified). "'Mere speculation or suggestion' is not sufficient [….] [C]ourts will not infer constructive notice for the purposes of summary judgment where the plaintiff's allegations are 'no more likely than any other potential scenario.'" *Bagley*, 492 F.3d at 330 (quoting *Allen v. Wal–Mart Stores, Inc.*, 850 So. 2d 895, 898–99 (La. App. 2d Cir. 6/25/03)).

"A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute." *White*, 699 So. 2d at 1084. While a plaintiff need not narrow the inquiry to minutes or hours, "constructive notice requires that the claimant prove the condition existed for some time period prior to the fall." *Id.* at 1084–85.

Even assuming that the floor was wet and presented an unreasonably dangerous condition, Montecino has not shown through positive evidence that the condition was present for a sufficient period of time. Montecino states that the

incident occurred within feet of an exit and that it was clearly raining for an hour before his fall. *See* R. Doc. 29 at 12–13. But, even with this undisputed evidence, "Louisiana courts have routinely granted motions for summary judgment based on a plaintiff's failure to meet her burden of proof as to the temporal element of constructive notice." *Marks v. DG Louisiana, LLC*, No. 23-1142, 2024 WL 2261967, at *3 (W.D. La. May 17, 2024); *see Kennedy v. Wal-Mart Stores, Inc.*, 733 So. 2d 1188, 1191 (La. 4/13/99) (finding that plaintiff "presented absolutely no evidence as to the length of time the puddle was on the floor before his accident); *Fountain v. Wal-Mart Stores, Inc.*, 297 So. 3d 100, 109 (La. App. 3 Cir. 3/18/20) (holding "any evidence that it was raining, that an area in which a fall occurred was visible to store personnel, and/or that [Defendant] should have foreseen the hazard created by rain puddles at or near the entrance of this high volume store because it knew it was raining, [was] insufficient to support a finding that it had constructive notice.").

## III. Whether Walmart Breached a Duty

Montecino also asserts that Walmart failed to exercise reasonable care in keeping its passageways reasonably safe by creating a "confusing pedestrian traffic flow." *See* R. Doc. 29 at 11, 15. We disagree. As Walmart points out, the Louisiana Second Circuit Court of Appeal has addressed this issue and explained:

> Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. *Haskins v. State Farm Fire & Cas. Co.*, 612 So. 2d 990, 993 (La. App. 2 Cir. 1993). Proprietors of stores generally have duties to use reasonable care to protect the safety of their patrons, and to avoid exposing them to unreasonable risks of harm. M*undy v. Dept. of Health and Human Res.*, 620 So. 2d 811, 813 (La. 1993); *Mosley v. Temple Baptist Church of Ruston, La., Inc.*, 920 So. 2d 355, 357 (La. App. 2 Cir. 1/25/06); *Pistorius*

> *v. Higbee Louisiana, LLC*, 356 So. 3d 1204, 1208 (La. App. 2 Cir. 2/8/23), *writ denied*, 359 So. 3d 1290 (La. 5/2/23); *Cusimano v. Wal-Mart Stores, Inc.*, 906 So. 2d 484, 487 (La. App. 1 Cir. 2/11/05). However, merchants are not insurers of their patrons' safety and a customer is under a duty to use ordinary care to avoid injury. *Ton v. Albertson's LLC*, 182 So. 3d 246, 250 (La. App. 2 Cir. 11/18/15), *writ denied*, 186 So. 3d 1169 (La. 2/5/16); *Mosley*, *supra*; *Pistorius*, *supra*; *Cusimano*, *supra*; Stewart v. *Gibson Prods. Co. of Natchitoches Parish La. Inc.*, 300 So. 2d 870, 879 (La. App. 3 Cir. 1974); *McManus v. Brookshire Grocery Co.*, 2009 WL 4831619, at *3 (La. App. 3 Cir. 12/16/09). Further, a storeowner's duty does not extend to protecting patrons from the independent actions of non-employee third parties unless there is a special relationship giving rise to such a duty. *Mosley*, *supra*; *Lowery*, *supra*.

*Whitehead v. Walmart of Louisiana LLC*, 399 So. 3d 16, 21 (La. App. 2 Cir. 7/3/24), *reh'g denied* (Aug. 22, 2024), *writ denied*, 396 So. 3d 65 (La. 11/20/24) (citation modified). The *Whitehead* court held that customers must be generally "aware of those exiting through the entrance door as was customary for patrons." *See id.* at 24.

Here, Montecino conceded that customers "generally go out of both doors" at Walmart stores. *See* R. Doc. 29-6 at 27. Montecino thus knew that customers could and would enter through exit doors, and his actions demonstrate that he exercised ordinary care to avoid a collision. After all, "merchants are not insurers of their patrons' safety." *See Whitehead*, 399 So. 3d at 21 (citing *Ton*, 182 So. 3d at 250). Accordingly, we find that Montecino has failed to establish that Walmart breached a duty owed to him or that its entrance and exit pathways presented an unreasonably dangerous condition.

## CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Walmart's Motion for Summary Judgment (R. Doc. 25) is **GRANTED**. All pending motions are hereby **DENIED AS MOOT**. A judgment will be issued accordingly.

**THUS DONE AND SIGNED** in Chambers this 20th day of August, 2026.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**